The final case today is Williams v. McDonough, case number 24-1030. Mr. Jones, when you're ready. Yes, ma'am, I am ready. Okay, please proceed. And I'll try to keep an eye out for Judge Cunningham because I could kind of see sometimes people would have trouble seeing. Okay, may it please the court, what we have here, just to give a little bit of factual background, this is an appeal from the Court of Appeals Veterans Claims. You can assume that we're quite familiar with the facts and issues you laid out in your briefs. Okay, okay, all right. Well, I think that the, is there anything in particular that the court would want me to start to address based upon the briefs or anything? Well, I can ask you a question. I mean, one of your issues about presumption of soundness and also, I'm having a hard time understanding how the presumption of soundness applies in this case to the cue issue. Okay, okay, all right. I think that the issue revolves around the fact that the board indicated that the regional office in 1975, I guess, had a reasonable basis to conclude that this was a congenital defect because of the spina bifida. And we argued in our brief that we think that that was wrong because the issue is not whether or not the spina bifida is capable of getting worse. The issue is whether or not the veteran's back condition is getting worse because that is the claim that he filed on. And once you take away the, that it's not a congenital defect, then the only way that you can say that the decision is correct based upon a pre-existing condition would be that the presumption of soundness would apply. Because once you don't have, because once it's not a congenital defect, and if you then want to say, okay, well, we're going to deny the claim because it pre-existed service, then the presumption of soundness, that is when the presumption of soundness applies. So that was the basis of that argument. What is your legal basis for saying that under Q, we should provide a sympathetic reading when really we're supposed to be looking for a clear and unmistakable error? Okay. Okay. Yes. I think that the argument that I was making from is that in particular in the Moody case that we cited in our brief, this court held that the Court of Appeals of Veterans Claims and the board said that a sympathetic reading was required. Was that a case that was under clear and unmistakable error case? Yes. Yes. Yes. Yes. That particular case was a sympathetic reading of the pleadings, right? I think so. I think that if I understand your question. What the sympathetic reading is supposed to be provided to is to the pleadings made by the veteran, right? I think that the particular case was that yes, that the reading, that you're supposed to give a sympathetic reading even in the Q context to determine whether or not the veteran had actually made an implicit claim. And what exactly are you asking for the court to give a sympathetic reading to in this case? Okay. What we're saying is that once you, assuming that the presumption of soundness applies, then considering that once the presumption of soundness applies, then the burden of proof shifts to the VA. And that necessarily should affect how one should interpret the evidence under clear and unmistakable error. But that's evidence. Now you're asking for a sympathetic reading of the evidence as opposed to a sympathetic reading of the veteran's contentions and pleadings that are made before the VA. Seems different to me. So I'm going to give kind of an example of kind of like of what I'm thinking about is when if the presumption of soundness applies, then the law says the burden of proof is on the VA. And so naturally, that should affect how one should look at the evidence. And so say like for example, in this particular case, you know, you have an October 1974, you know, back exam. The only history given is this injury in service in 1969. If the presumption of soundness applies, then the burden of proof would have to be on the VA to demonstrate by clear. Right, but there's a fact finding here that the episode of lifting a footlocker is not an in-service occurrence. Well, the initial RO that dealt with your client and the board and the rejection was based on the fact that yes, we know that this serviceman when he was in service lifted a footlocker and went into the bed tent later and complained my back hurt. And that evidence was deemed insufficient to be an in-service occurrence of an injury that would lead to compensation. I think that the way that I thought that it was, was that the, and in fact, subsequently the regional office when they subsequently granted the claim, they found that he had degenerative disc disease. So it was my understanding and it, and it may be that there's no specific finding when he finally gets the service connection for exactly why they have the original records. Plus they have some doctor's records afterwards. Okay. In front of that agency. So we don't know exactly why the fact finder, when they looked up the record about the footlocker initially said no service connection later said, yes, service connection, but it looks like there was additional evidence in front of the second body that granted the service connections and doctor's examination of him since, and we don't have them in the record. Okay. Okay. I'll grant you, there is a question and say, well, why wasn't he service connected when he first filed if all there is to it was lifting the supposed injury from lifting the footlocker? Yes. Yes. Yes. And this, and of course, I don't know if the, if the additional, if the additional evidence was service records, then you may then have a 3.156 issue, but I don't, but, but the way I kind of didn't understand it. Q is found if a body who makes an initial decision didn't have all the relevant information in front of it. And if it had the relevant information, the veteran clearly would have won. That's Q. But we don't have that issue being presented here because we don't know whether when he was finally given his service connection, whether there was reference to evidence then that would have been available initially at the time that he was initially turned down. Okay. So I can't, I can't give you a predicate for you on Q based on the fact that he was given service connection and I believe his wife is still enjoying, I hope is still enjoying the fruits of that. She is. She is. She is. I noticed that Judge Cunningham. The question, you're looking for an earlier effective date, right? What? You're looking for an earlier effective date. That's correct. That's correct. Yes. I said yes. Then 2011 because of, well, and I don't think the veteran even appealed for the earlier effective date at the time when it was granted. Well, he didn't. No. Yeah. So, I mean, so that 2000. That's why you're on Q. Exactly. Yeah, exactly. But you had a question for me? I did. So just circling back and following up on Judge Stoll's question. So let's assume that we do not believe the presumption of soundness is relevant here. With that assumption, what would you say is your best argument of why you're applying Q? Assuming, assuming that the presumption of soundness doesn't apply. Is that my correct? I think that. Well, I think number one is that the finding that the veteran suffered from spina bifida and therefore suffered from a congenital defect is clearly wrong. We also think that the requirement, and we articulated this in our brief, that the RO said that he suffered from a trauma in service adds an additional requirement that is not necessarily, you know, that is not necessarily supported in law. So that would be the argument that I would make. Do you have further questions? You're into your rebuttal time. Judge Cunningham, do you have any further questions? Would you like to, you can continue arguing or you could save your time at this point. I'll save my time. Okay. Let's hear from the government. Ms. Havasey. Good afternoon, Your Honors, and may it please the Court. I want to address first this issue of the presumption of soundness. And it's our position that the presumption does not, not necessarily doesn't apply here, but that it doesn't help decide the issues in this case. We don't disagree that it applies. He did have an entrance exam that showed no diseases or injuries, so that inherently invokes the presumption of soundness. But the presumption of soundness doesn't really help the rest of his case in terms of whether there should be a sympathetic reading versus the Q standard, which is undebatable error. This court clearly held in Semraj and also in Moody that the sympathetic reading standard applies to the pleading. So in the Moody case, it had to do with whether an informal, an informal claim had been filed and that the, this court held that the evidence was not required to undebatably show that an informal claim had been filed, that under a sympathetic reading, it would just have to show under a sympathetic reading that whatever was filed constituted an informal claim. So in here, it's your view that they're trying, the attempt by Mr. Williams is to rely on the sympathetic reading for the evidence as opposed to a sympathetic reading for the pleadings. Is that right? That's what I understand Ms. Williams' argument to be. I think it might also be that a sympathetic reading should apply to the RO's decision or perhaps the board's decision to determine whether or not there was Q, but that is not the Q standard for looking at the decisions below. It's whether the error was undebatable given the facts and the law at the time. Unless the court has further questions. Do you have any questions? No. Do you have any questions Judge Cunningham? Okay. Thank you. Okay. Does the court have any further questions for me? I understand the circumstances that your client is in, wanting to have an early or effective date for the award for the deceased veteran's injury, which has been held to be service-connected way back to when he served. But in order to demonstrate Q, you have to show that there was either a blatant legal error in this material or that there was factual evidence that was in front of the original fact finder that wasn't there and that that factual evidence you have presented would be clear winner. And I haven't seen in your case any factual evidence that you've brought forth that was available to the original adjudicator, but who failed to see it and therefore committed the error. And insofar as any legal error, yes, presumption of soundness exists in every case, but there's no evidence here that that presumption of soundness was not granted. No one said, for example, oh, guess what, this is all from your previous back injury and we're turning you down because you had back problems before you got into service. That would have been wrong if it'd been done because there is a, if that condition isn't noted when you come into service, there's a presumption that you were in good shape. So I was having trouble connecting your statements, which is that there is a presumption of soundness for a veteran. Yes, there is, but I couldn't see how that presumption was not honored here. And then the notice notion that the Veterans Administration is giving sympathetic reading to the version of the cases being footworked by a veteran. I didn't see any evidence in which there was a failure to give you the sympathy that you had been entitled to your client, because the question of whether or not this is an error in the assessment of the second condition isn't a matter over which there is deference given in sympathy. It's a pure legal question. Well, I think that the, what I would respond is that the presumption of soundness is that when you say that something has a congenital defect, and that was my understanding in the rating code sheet, they put spina bifida congenital defect, that when you say something is a congenital defect, then you're not, then basically what you're saying is that, okay, this thing has a preexisted service. Well, you can have a congenital defect and still have a service-infected problem. If you have a congenital defect, then that's something that's just unrecognizable and incompensable. Yeah, yeah, and I think that the argument was that the congenital defect finding was clearly wrong, because the issue, because the issue involves the veteran's back and not his spina bifida, and so that was, you know, so that was our contention. Thank you. I don't think we have any further questions, but you have a little bit more time if you'd like to use it. Good, thank you very much. Thank you. We thank counsel for your argument. The case is closed. Nice to see counsel shaking hands at the end of an argument, sir. Well, I appreciate that, and I appreciate your time. Thank you. Thank you.